UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Trudy B. Grant, Sarah Krawcheck, Nashonda Hunter, Max Milliken, and Caleb Clark, | No.: 2:23-cv-06838-BHH |
| Plaintiffs, | |
| v. | **STATE ELECTION COMMISSION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |
| Howard Knapp as the Executive Director of the South Carolina Election Commission, Dennis Shedd (Chair), JoAnne Day, Clifford J. Edler, Linda McCall and Scott Moseley, as Members of the South Carolina Election Commission, [1] and Charleston County Board of Elections and Voter Registration, | |
| Defendants. | |

Defendants Howard Knapp, Dennis Shedd (Chair), JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley, all of whom have been sued in their official capacities with the State Election Commission (SEC),[2] submit this Memorandum in Support of SEC Defendants' Motion for Summary Judgment of the Plaintiffs' Twenty-Sixth (26th), Fourteenth (14th), and First (1st) Amendment challenges to S.C. Code Ann. § 7-15-320(B)(2) (Supp. 2023). For the reasons that follow, the SEC respectfully contends that it is entitled to summary judgment.

## INTRODUCTION

Plaintiffs contend that S.C. Code Ann. § 7-15-320(b)(2) abridges their right to vote because it allows qualified voters (Electors or Voters) in  South Carolina sixty-five (65) years old and older

---

[1] S.C. Code Ann. § 7-3-10 created the "State Election Commission." (SEC)—the proper name of the SEC. There is no South Carolina government agency known as the South Carolina Election Commission.

[2] Collectively, the Commission and Knapp are referred to as the SEC Defendants.

(Elderly Voters) to vote absentee without excuse by mail (Absentee) and does not extend that same choice to Voters under 65. Plaintiffs have not alleged in their Complaint or otherwise that § 7-15-320(B)(2) substantially burdens their right to vote in violation of the 26th, 14th, or 1st Amendments. Plaintiffs, however, express their desire to have the right to vote Absentee in an election when it "is particularly convenient, especially in any election where such plaintiff may be unable to vote at all except by absentee ballot." Pls.' Second Am. Compl., ECF No. 24, ¶ 6(b).

Historically, the right to vote in South Carolina has been exercised in only one manner: by a Voter casting her ballot in person at her polling place on Election Day. Of the various amendments to the United States Constitution, those that have addressed the "right to vote" have not directly addressed the manner in which the franchise may be exercised. Rather, those Amendments continue to leave the time, place, and manner of voting to the States, as prescribed by Article I, Section 4 of the Constitution.

Neither the United States Supreme Court[3] nor the Fourth Circuit Court of Appeals has opined on whether a State's law regulating absentee voting based on age violates the 26th Amendment,[4] the 14th Amendment Equal Protection clause, or the 1st Amendment free speech and association applied through the Due Process clause of the 14th Amendment. Certainly, the

---

[3] The Supreme Court has denied *certiorari* addressing this issue in two cases, one from the Seventh Circuit Court of Appeals (*Tully v. Okeson,* 977 F.3rd 608 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2798 (2021)) and the other from the Fifth Circuit Court of Appeals (*Texas Democratic Party v. Abbott,* 978 F.3d 168 (2020), *cert denied,* 140 S. Ct. 2015 (2020)). In both cases, the Circuit Courts held that the age based absentee voting statute did not run afoul of the 26th Amendment.

[4] As discussed below, the United States Courts of Appeal for the Fifth and Seventh Circuit have addressed the application of the 26th, 14th, and 1st Amendments to State absentee laws allowing voters 65 and over to vote by mail without excuse and not extending that same privilege to voters under 65. Both Circuits found the State election regulation laws to be constitutional. *See Ciscino v. Texas*, 2023 WL 5769414 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1391; *Texas Demo. Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020) (vacating injunction); *Tully v. Okeson,* 78 F. 4th 377 (7th Cir. 2023).

various Amendments to the Constitution have expanded the right to vote—Fifteenth (15th) (not denied or abridged on account of race); Nineteenth (19th) (not denied or abridged on account of sex); Twenty-fourth (24th) (not denied or abridged for failure to pay poll tax); and 26th (not denied or abridged on account of age)—and applies to State and Federal elections. Each of these amendments addresses a qualification for voting, not the manner of voting.  The Constitution itself only addresses the right to vote for the U.S. Senate and House of Representative offices and leaves it to the States to "determine the time, places and manner of election of Unites States House and Senate members, except as the Congress may make laws to regulate." U.S. Const., Art. I, § 4.[5]

The Supreme Court has repeatedly recognized that in order to have fair, honest and orderly elections, States must substantially regulate elections. *See Storer v. Brown*, 415 U.S. 724, 730 (1974); *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983); *Burdick v. Takushi,* 504 U.S. 428, 433 (1992). In furtherance of this responsibility, South Carolina has long required a Voter to vote in person and now allows early voting in person two (2) weeks prior to Election Day and has eight (8) limited exceptions allowing absentee voting by mail. All of those exceptions (S.C. Code Ann. § 7-15-320)—excepting only the State's determination to allow Elderly Voters to vote Absentee, S.C. Code Ann. § 7-15-320(B)(2)— allow Voters to vote by mail because they would otherwise be deprived of the right to vote since they could not physically appear at the voting place during the prescribed voting periods.

---

[5] The only law SEC Defendants are aware of that Congress adopted specifically mandating absentee voting is the Uniformed and Overseas Citizens Absentee Voting Act. *See* 52 U.S.C. § 20301, *et seq*. (1986). If Congress wanted to regulate absentee voting they have the authority. *See* 26th Amendment, § 2 (authorizing Congress to enforce the Amendment).

## UNCONTESTED FACTS

**1.      The Parties**

1)      The SEC is the South Carolina executive branch agency generally responsible for administering elections in this State. S.C. Code Ann. § 7-3-10, *et. seq.* Knapp is the Executive Director of the SEC, whose duties are prescribed in § 7-3-20 and elsewhere in Title 7, S.C. Ann. The members of the Commission are appointed by the Governor of South Carolina and must be confirmed by the South Carolina Senate prior to taking office. SEC Defendants have only the authority conferred by law and must act within that authority. *S.C. Tax Comm'n v. S.C. Tax Bd. of Rev.*, 278 S.C. 556, 560, 299 S.E.2d 489, 491-92 (1983).

2)      The Charleston County Board of Elections and Voter Registration (Board) is a political body created pursuant to S.C. Code Ann. § 7-5-10, whose members are appointed by the Governor, upon recommendation of the county Legislative Delegation. The Board is funded by Charleston County (S.C. Code Ann. § 7-5-40) and administers election (*Id.)* in Charleston County pursuant to the requirements of Title 7 of the Code of Laws of South Carolina 1976.

3)      Plaintiffs are South Carolina Electors, being registered to vote in Charleston or Berkeley Counties, South Carolina.

        a.      Trudy Bouvier Grant is a resident of Charleston County and has been since 2008. *See* Ex. 1, ¶ 1, Pl. Grant's Answers to State Defs.' First Interrogs. She has been registered to vote in Charleston County since 2008 and since 2010, has voted in primary and general elections and presidential preference primaries. *Id., ¶* 3. For each election Grant has voted in, she voted in person on a voting machine either at the poll on Election Day or at a central location for early voting and for several elections and has voted absentee at a central location (not by mail) because

she would be out of the county on Election Day. *Id*., ¶ 4. She has never been unable to cast a vote on Election Day because she was not eligible to vote absentee by mail. *Id.* ¶ 5.

b. Sarah Louise Krawcheck is a resident of Charleston County and has been since 2020. *See* Ex. 2, ¶ 1, Pl. Krawcheck's Answers to State Defs.' First Interrogs. She has been registered to vote in Charleston County in 2023. *Id.*, ¶ 2. She has not voted in South Carolina.

c. Nashonda Hunter is a resident of Charleston County and has been since 2009. *See* Ex. 3, ¶ 1, Pl. Hunter's Answers to State Defs.' First Interrogs. She has been registered to vote in Charleston County since 2009. *Id.,* ¶¶ 1 & 2. She has voted in primary and general elections and presidential preference primaries. *Id.,* ¶ 3. For each election Hunter has voted in, she voted at her regular polling place or voted absentee in person. *Id*., ¶ 4. She has never been unable to cast a vote on Election Day because she was not eligible to vote absentee by mail. *Id.* ¶ 5.

d. Max Robert Milliken is a resident of Charleston County and has been since 2008. *See* Ex. 4, ¶ 1, Pl. Milliken's Answers to State Defs.' First Interrogs. He has been registered to vote in Charleston County since he turned 18 in 2018. *Id.*, ¶¶ 1 & 2. He has voted in primary and general elections, presidential preference primaries, and voted in person on Election Day. *Id*., ¶ 4. He has never been unable to cast a vote on Election Day because he was not eligible to vote absentee by mail. *Id.* ¶ 5.

e. Caleb Quinton Simmon-Clark[6] is a resident of Berkeley County and has been since 2008. *See* Ex. 5, ¶ 1, Pl. Clark's Answers to State Defs.' First Interrogs. He has been registered to vote in Berkeley County since he turned 18 in 2022. *Id.*, ¶¶ 1 & 2. He has voted in in

---

[6] Caleb Clark is listed as the Plaintiff in the Complaint. His interrogatory responses state his name as "Caleb Quinton Simmon-Clark."

primary and general elections and a municipal election. *Id., ¶* 3. He has voted in person on Election Day or early at the "County headquarters". *Id*., ¶ 4. He has never been unable to cast a vote on Election Day because he was not eligible to vote absentee by mail. *Id.* ¶ 5.

## **ELECTION LAW FRAMEWORK**

a. *United States Constitutional Provisions.* Art. I, sec. 4, provides that the States shall determine the time, places and manner of election of United States House and Senate members, except as the Congress may make laws to regulate.

b. *South Carolina Constitutional Provisions.* The South Carolina Constitution expressly provides that the "Right of Suffrage" "shall be protected by laws regulating elections." S.C Const., Art. II, § 1. To qualify to vote in the State an Elector be a citizen of the United States and South Carolina and 18 years of age. *Id.,* § 4.[7] The General Assembly is required to "regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, … ." *Id.,* Art. II, § 10.

c. *Statutory Provisions.* To qualify to register to vote, Voters must: (1) meet the age qualification; (2) not be under a disability named in the S.C. Construction; and (3) must reside in the county and polling precinct where she offers to vote. S.C. Code Ann. § 7-5-120(A); *see* § 7-5-120(B) for Voter disqualifications.

The General Assembly provided three manners by which a Voter can cast her vote: (1) in person, (2) absentee, or (3) early. *See* ECF No. 24, ¶ 10.[8]

---

[7] In 1970, the State's electorate adopted Article II, Right of Suffrage, to the Constitution of South Carolina and the General Assembly ratified it in 1971 with the voting ages set at twenty-one (21) years old. The S.C. Const. was amended after ratification of the 26th Amendment.

[8] In their Complaint, Plaintiffs allege there are three (3) manners of voting—in person, early voting in person and absentee. ECF No. 24, ¶ 10. Yet, in their Memorandum in support of its Rule 12(C) Motion, they claims there are only 2. ECF No. 36-1, at 5. Plaintiffs are bound by the allegations in their complaint. *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 365 (4th Cir. 2022).

i.    <u>In person voting.</u> Beginning with the State's first constitution in 1790, South Carolina has historically required an elector to vote in person on Election Day. South Carolina Constitution of 1790, R. June 3, 1790, § 4; *see* S.C. Code Ann., §§ 7-7-10, -910, & 7-13-710, *et seq.*

ii.    <u>Absentee voting</u>.  Prior to 1953, South Carolina voters could only vote in person on Election Day. In 1953, shortly after World War II and during the Korean Conflict, the State first allowed Absentee voting—limiting that choice to individuals who served the United States Armed Forces, Merchant Marines, the American Red Cross or United Service Organization attached to and serving with the Armed Forces outside of the country, and employees of the United States Government serving overseas. 1953 S.C. Acts No. 329, § 1.[9]

In 1992, 18 years after it ratified the 26th Amendment, the General Assembly enacted an exception from in person voting for people seventy-two (72) years old and older allowing them the choice of vote absentee ballot by mail or in person. 1992 S.C. Acts No. 489 § 1. In 1995, the General Assembly lowered that age to 65, where it has remained for almost 30 years.[10] 1995 S.C. Acts No. 80, § 1.

---

[9] The title of Act 329 demonstrates the legislative intent that individuals and their dependents serving their country a method of voting that allowed them to vote when they were physically out of the country, thus being deprived of the franchise because they were physically unable to vote in person: "An Act to provide for the registration of, and Participation in Certain Elections By, Members of the Armed Forces of the United States, … ."

[10] In determining legislative intent, there is the presumption that the Legislature has knowledge of prior legislative acts. Our legislature is presumed to have knowledge of prior court decisions and to have taken them into consideration when enacting later laws. *Berkebile v. Outen*, 311 S.C. 50, 53, 426 S.E.2d 760, 762 (1993); *Sloan Const. Co., Inc. v. Southco Grassing, Inc.,* 377 S.C. 108, 117, 659 S.E.2d 158, 163 (2008).

55176300 v2.doc

Chapter 15, "Absentee Registration and Voting"[11] of Title 7 governs absentee voting in South Carolina. S.C. Code Ann. § 7-15-320 (Supp. 2023) sets forth the conditions allowing a Voter to vote absentee by mail in South Carolina. Section 7-15-320(A) allows four categories of voters[12] to vote by mail if they are physically unable to vote in person during Early voting and on Election Day. Section 7-15-320(B) allows four categories of Voters[13] to vote by mail, regardless of whether they are able to vote Early or on Election Day.

        iii.    <u>Early Voting</u>. With the passage of Act 150 of 2022 on May 13, 2022, South Carolina added its third method of voting——early voting in person (Early). *See* 2022 S.C. Acts No. 150, § 1, codified as S.C. Code Ann. § 7-13-25 (Supp. 2023). Section 7-13-25(A) and (D) enables "a qualified elector may cast his ballot, without excuse,[14] during an early voting period for all elections" at an early voting center[15] established by each CBVRE. The early voting period is "from Monday through Saturday for the two-week period immediately preceding an election." § 7-13-25(E). This year, the early voting period begins October 21, 2024[16] and closes November 2, 2024. <u>2024 Election Calendar</u>, South Carolina Election Commission, accessed August 28, 2024,

---

[11] Plaintiffs have not raised the South Carolina requirements for absentee registration as an issue in this case.

[12] Those categories are persons: (1) with employment obligations, (2) attending sick or physically disabled persons; (3) confined to jail or pretrial facilities; and (4) who are going to be absent from their county of residence.

[13] These categories are persons: (1) physically disabled; (2) sixty-five (65) years old or older; (3) members of the Armed Forces, Merchant Marines, spouses and dependents; and (4) persons admitted to the hospital on election day or within four days prior to the election.

[14] Early voting allows any qualified elector to vote early without excuse (as required by absentee voting, excepting Voters 65 or older). S.C. Code Ann. § 7-15-25(A) (Supp. 2023).

[15] Section 7-13-25(D) authorized each CBVRE to establish not less than one nor more than seven, early voting centers in the county.

[16] Early voting opens four days prior to the deadline to request an absentee ballot.

https://scvotes.gov/wp-content/uploads/2024/07/2024-Election-Calendar-scVOTES-2024-07-23.pdf.

## I.    <u>SUMMARY JUDGMENT SHOULD BE GRANTED.</u>

<u>STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment should be granted whenever "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment should be granted "when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). In ruling on a motion for summary judgment, the evidence is construed in the light most favorable to the non-moving party and the Court draws all reasonable inferences in that party's favor. *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 340 (4th Cir. 2008).

<u>DISCUSSION</u>

**A.    First Cause of Action—Section 7-15-320(B)(2) does not Abridge Plaintiffs' 26th Amendment Right to Vote.**

The 26th Amendment provides:

> Section 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied[17] or abridged by the United States or by any State on account of age.

---

[17] Plaintiffs do not allege that § 7-15-320(B)(2) denies their right to vote, just that it abridges the right.

Section 2. The Congress shall have power to enforce this article by appropriate legislation.[18]

1. *The "right to vote" does not include the manner of voting.* The baseline question for Plaintiffs' 26th Amendment claim is: What is the definition of the "right to vote"?  Plaintiffs claim that their right to vote has been abridged because Elderly Voters have an additional manner of exercising the franchise that they do not have. Thus, Plaintiffs claim that the "right to vote" is expansive and includes the manner of casting the ballot, *i.e.* in person, early or absentee. ECF 24, ¶ 17 (the Amendment constitutionally protected the class of voters between 18 and 64. "Granting the right to vote by mail to all voters over the age of 65 but not to all voters under that age is an abridgement of the right to vote 'on account of age'.) SEC Defendants assert the right of vote is just that—the ability to cast ones vote without material burden and have it count. It does not extend to the manner of voting, the regulation of which is left to the States.

In *McDonald v. Bd. Of Elec. Comm. Of Chicago*, 394 U.S. 802 (1969),[19] a 14th Amendment Equal Protection challenge to an Illinois' absentee voting statute, the Supreme Court established the meaning of the phrase "right to vote" in the context of absentee voting.[20] The Illinois statute allowed inmates, incarcerated in a county outside their county of residence and

---

[18] In the 51 years since the Amendment was ratified, Congress has not enacted any legislation addressing a State's ability to regulate the manner, *i.e.* the process a State employs to enable its voters to exercise the franchise.

[19] *McDonald* was issued prior to the enactment of the 26th Amendment but the Congress was debating the Voting Rights Act (VRA) amendments, including lowering the voting age to 18. And the Court decided the *Oregon* case less than a year after *McDonald.* As a matter of statutory construction, federal courts "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.*" Goodyear Atomic Corporation v. Miller*, 486 U.S. 174, 184–85 (1988); *see also Strawn v. AT&T Mobility*, LLC, 530 F.3d 293, 297 (4th Cir. 2008)

[20] As the Seventh Circuit Court of Appeals opined in *Tully v. Okeson*, 78 F.4th 377 (2023), "the Supreme Court's decision in *McDonald ...*, handed down only two years before the Twenty-Sixth amendment was ratified, clearly distinguishes the right to vote from 'a claimed right to receive absentee ballots.'" *Tully II,* 78 F.4th at 383.

individuals incapacitated by physical illness to vote absentee but did not allow inmates incarcerated in their county of residence to vote absentee. Thus, the *McDonald* plaintiffs alleged that since they did not meet the State's requirements for absentee voting, they were denied their Equal Protection right to vote. *McDonald's* facial challenge was based on two Equal Protection Clause grounds: (1) there was not a reasonable relationship (rational distinction) between allowing absentee voting for those "medically incapacitated" and not allowing it for those "judicially" incapacitated, rendering the classifications arbitrary; and (2) it was arbitrary to allow prisoners not incarcerated in their home counties to vote absentee and not allow those incarcerated in their home counties to vote absentee.

The Court applied the "rational relationship" test— "[t]he distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end" and will be struck "only if based on reasons totally unrelated to the pursuit of that goal." *McDonald,* 394 U.S. at 809. The Court applied this level of scrutiny because the challenged statute did not involve a suspect class. Plaintiffs have not alleged that age is a suspect class. .[21] The rational relationship test should be applied in determining Plaintiffs' 26th Amendment challenges to § 7-15-320(B)(2).

The *McDonald* Court held:

> [T]here is *nothing in the record to indicate that the Illinois Statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote.* ***It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots.*** … the *absentee statutes*, which are designed to make voting more available to some groups who cannot easily get to the polls, *do not themselves deny appellants, the exercise of the franchise.*"

---

[21] *See Gregory v. Ashcroft,* 501 U.S. 452, 470 (1991) ("Petitioners are correct to assert their challenge at the level of rational basis. This Court has said repeatedly that age is not a suspect classification under the Equal Protection Clause.") (internal citations omitted).

*McDonald,* 394 U.S. at 808-809 (emphasis added).[22]  *McDonald's* distinction between the "right to vote" and the "claimed right to receive absentee ballots" has stood for well more than a half century (55 years), two more years than the 26th Amendment has been in effect.

In addressing 14th, 15th, and/or 1st Amendment challenges to various States' regulation of absentee voting (albeit not age-related), federal Circuit Courts have followed the *McDonald* holding that the "right to vote" is the right to exercise the franchise and not the right to vote in any manner a particular Voter chooses because the Constitution expressly provides State legislatures authority to regulate the time, places and manner of conducting elections. *Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir. 2020) (time to request absentee ballots); *see also Veasey v.Abbott*, 830 Fd.3d 216, 307 (concurring opinion) (5th Cir. 2016) ("No court has ever held that a voter has a right to cast a ballot by the method of his choice.") (footnote omitted); *Richardson v. Texas Secretary of State*, 978 F.3d 220, 232-33 (2020), *cert. denied sub nom.*; *Weisfeld v. Scott,* 143 S. Ct. 773; *Griffin v. Roupas*, 385 F.3d 1128, 1130-32 (7th Cir. 2004). Notably, In *Burdick v. Takushi*, 504 U.S. 428, 433-434 (1992), the Supreme Court cited to *McDonald* with approval.

In *Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621 (1969) (property ownership/lease requirement),[23] the Court distinguished *McDonald.* Holding the statute unconstitutional, the *Kramer* Court stated:

> This case presents an issue different from the one we faced in *McDonald* [ ]. The present appeal involves *an absolute denial of the franchise*. In *McDonald*, on the other hand, we were reviewing a statute which made *casting a ballot easier for some who were unable to come to the polls*. As we noted, there was no evidence that the statute absolutely prohibited anyone from exercising the franchise; at issue

---

[22] Plaintiffs do not identify the level of scrutiny they want the Court to apply to their Motion and Memorandum. *Passim.* In footnote 16. Plaintiffs' state their belief that § 7-15-320(b)(2) "would likely fail even a minimum rationality test."

[23] A New York statute provided that certain citizens otherwise eligible to vote could only vote in a school district election if they owned property or leased property in the district or were parents of children enrolled in a school in the district.

was not a claimed right to vote but a claimed right to an absentee ballot. *Id.*, at 807—808.

*Kramer*, 395 U.S. at 627, n. 6. (Internal citations omitted)(emphasis added).

In 1974, three years after the ratification of the 26th Amendment, the Supreme Court decided *O'Brien v. Skinner*, 414 U.S. 524 (1974), another 14th Amendment challenge to an absentee voting statute. The *O'Brien* Court cited to *McDonald*, distinguishing it. Justice Marshall, in his concurring opinion,[24] discussed the basis for the Court's conclusion that the rational-basis test should apply in *McDonald* but not in *O'Brien*, stating that the Court "relied heavily in *McDonald* on the fact that there was no evidence that the State made it impossible for the appellants to exercise their right to vote."[25] *Id.* at 531. Further the *McDonald* Court:

> characterized the appellants' claim by saying '(i)t is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots.' … Because of the relatively trivial inconvenience encountered by a voter unable to vote by absentee ballot when other means of exercising the right to vote are available, the Court properly rejected appellants' contention that strict scrutiny of the statutory classifications was required.

*Id.* (citation omitted). In short, three years after the ratification of the 26th Amendment, *O'Brien* recognized *McDonald's* distinction between the "right to vote" and "a claimed right to receive absentee ballots."

Simply put, *McDonald* stands for the proposition that the right to vote is the right to exercise the franchise, not the manner in which that right is exercised. In determining whether a State's regulation of the method by which the franchise is exercised is alleged to be abridged, as

---

[24] Justices Douglas and Brennan joined in the concurrence.

[25] The New York Court of Appeals construed the statute such that, while there was no legal disability preventing appellants from registering or voting, because they were in prison, without access to absentee voting denied by statute, they have not alternative means of voting, it amounts to an absolute denial of the franchise. *Id.* at 530-531.

opposed to denied, the rational relationship[26] standard must be applied to determine the constitutionality of the statute when it does not involve the fundamental right to vote.

Clearly, § 7-15-320(b)(2) does not abridge the right of Plaintiffs to cast a vote in an election. The statute only enables Elderly Voters whose ability to vote might be extinguished because of intervening circumstances such as work, illness, service of country, travel or physical impediments or other conditions associated with the elderly to vote absentee by mail. There is nothing in the Complaint or the record review that demonstrates that § 7-15-320(B)(2) has any impact on Plaintiffs' fundamental right to vote. As discussed at pages 20, 24-26 the State has a legitimate interest in regulating absentee voting and assuring, to the extent possible, orderly, fair, and fraud free elections in which the South Carolina electorate has confidence.

Plaintiffs admit that they each have the right to vote in person on Election Day, to vote Early in person during the two weeks prior to Election day, and, in the event they are unable to vote on Election Day or during Early voting, they can vote by mail if they fall within one of the eight qualifying exceptions, excluding the Elderly exception, to vote by mail. ECF No. 24, ¶¶ 10 & 14; ECF No. 36-1, p. 6 (in person voting on Election Day and Early is available to all Electors and seven of the eight Absentee exceptions are available to Plaintiffs) & Exs. 1-5.

Plaintiffs just complain because the General Assembly has not extended the privilege of voting Absentee to them as it has to Elderly Voters. Plaintiffs simply seek the "particularly convenient" method of voting by mail. ECF No. 24, ¶ 6(b). But the manner by which one votes, other than in person, is a privilege or a convenience, not a right:

---

[26] In the event the Court determines that the rational relationship test is not applicable the Plaintiffs' constitutional challenges, then the level of scrutiny should be the *Anderson/Burdick* balancing test discussed *infra* at Pages 20-22.  For the same reasons § 7-15 320(B)(2) does not violate the Equal Protection and Due Process clauses, it does not violate the 26th Amendment.

> Convenience voting is typically understood to mean any mode of balloting other than precinct-place voting. Examples include casting a ballot early at a local elections office, at a satellite location, or at a voting center; filling out an absentee ballot and dropping it in the mail; phoning into a special system; or logging into a secure website and casting a ballot on the web. Convenience voting goes by various names, but they all capture one essential idea: making voting more convenient (less costly) by allowing voters to cast a ballot at a place and time other than the precinct polling place on Election Day.

*Convenience Voting*, Paul Gronke, Eva Galanes-Rosenbaum, Peter A. Miller, & Daniel Toffree,

Annu. Rev. Poli. Sci. 2008 11:437-55,438;

https://www.annualreviews.org/content/journals/10.1146/annurev.polisci.11.053006.190912.

 As the uncontested evidence demonstrates, none of the Plaintiffs have ever failed to vote in an election for which they were eligible because they did not have the ability to vote Absentee. *See* Exs. 1, ¶ 4, 5, 7; 2, ¶4,5,7; 3, ¶4,5,7; 4, ¶5; and 5, ¶ 4,5. Section 7-15-320(B)(2) does not abridge the right to vote on account of age and § 7-15-320(B)(2) bears a rational relationship to the legitimate state end of preventing fraud in elections, insuring the integrity of elections and maintaining public confidence in the electoral process. Section 7-15-320(B)(2) IS totally related to the pursuit of this goal. Count 1 of the Complaint should be denied.

   2. *Plaintiffs' theory[27] is entirely inconsistent with the original understanding of the 26th Amendment.*

The Supreme Court has repeatedly interpreted the Constitution based on the "original meaning" of its provisions. *Fin. Oversight & Mgmt. Bd. For Puerto Rico v. Aurelius Inc., LLC.,* 590 U.S. 448, 462 (2020).  In the early 1970s, no one thought the 26th Amendment would be

---

[27] As discussed in the SEC Defs.' Mem. in Opp'n to Pls.' Rule 12(c) Mot., (Rule 12(c) Motion) they have offered, at best, a weak historical review[27] of the 26th Amendment. Plaintiffs' Rule 12(c) Motion virtually ignores the history of the 26th Amendment and our country's long-standing use of age-based voting provisions.

interpreted as broadly as Plaintiffs now contend. *See District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008) ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."); *cf. Tex. Democratic Party v. Abbott*, 961 F.3d 389, 408 (5th Cir. 2020) ("[T]here is plenty of evidence that the Amendment's most immediate purpose was to lower the voting age from twenty-one to eighteen."). To understand the reach of the 26th Amendment, the Court therefore must look to the language of the Amendment and the way it was understood at the time it was adopted. *Tully v. Okeson,* 78 F.4th 377, 383 (7th Cir. 2023).

Efforts to pass the 26th Amendment began during World War II, when the draft age was lowered to 18 and some members of Congress sought to lower the voting age to 18 as well. *See* Jenny Diamond Cheng, *How Eighteen-Year-Olds Got the Vote 9*–16 (Aug. 4, 2016) (unpublished manuscript).[28]  The argument was that if a person was old enough to be drafted, he was old enough to vote. *Id.* at 10. Senator Arthur Vandenburg of Michigan proposed an amendment worded exactly as the 26th Amendment would be adopted. *Id*. at 17–18. Notably, "there is no evidence at any point the specific text of the Twenty-sixth Amendment was given any particular thought," but rather the proposal was drafted as it was because other amendments had used that language. *Id*. at 7, 17–18; *see also id*. (stating that, "as a matter of history, there is no particular reason" to analogize this amendment to other voting amendments). Efforts continued through the 1950s to lower the voting age, including a proposed amendment backed by President Eisenhower. *Id*. at 19–22. In addition to the draft-focused argument, proponents argued that more readily available media and expanded public education meant younger people would be sufficiently informed to vote in ways that previous generations had not been. *Id*. at 24.

---

[28] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2818730

The early 1960's focused on voting rights for African Americans, culminating in the passage of the Voting Rights Act of 1965. *See* Pub. L. 89-110, 79 Stat. 437 (1965). Looking to ride that wave, supporters of lowering the voting age tried to connect their cause with the efforts to eliminate race-based restrictions that were underway. *See* Cheng, *supra* at 33–35. But the focus on lowering the voting age came center stage in the late 1960s, when Vietnam became a flashpoint in American public life. Congress passed the Voting Rights Act Amendments of 1970. *See* Pub. L. 91-285, 84 Stat. 314 (1970). In that act, Congress provided:

> no citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any primary or any election shall be denied the right to vote in any such primary or election on account of age if such citizen is eighteen years of age or older.

*Id.* Title III, § 302, 84 Stat. at 318; *see also* Cheng, *supra* at 58–64 (detailing how the Senate decided to lower the voting age by statute). During these debates, some members of Congress analogized denying younger voters the right to vote to discrimination based on race or sex, but other members saw a difference between race and sex, on one hand, and age, on the other. *See* Cheng, *supra* at 64–76. (Distinguishing age from race and sex makes sense: There must be some age limit on voting, as infants are not capable of voting, but all races and both sexes are equally capable of casting a ballot.)

In *Oregon v. Mitchell*, 400 U.S. 112 (1970), the Supreme Court upheld this age provision as to federal elections, but struck it down as to State elections, creating a so called dual voting system where some voters could vote on Election Day in federal elections but not in State elections. *See* Cheng, *supra* at 81. In March 1971, Congress passed the 26th Amendment, and by June, thirty-eight (38) states had ratified it. President Nixon signed the Amendment on July 5. It is clear the way Americans understood the Amendment was as a constitutional provision designed to bring eighteen to twenty (18-20) year olds into the political process.

In the *Constitution Annotated*, the annotation to the 26th Amendment states, in pertinent part, that confronted with "the possibility that they might have to maintain two sets of registration books and go to the expense of running separate election systems for federal elections and for all other elections, the states were receptive to the proposing of an Amendment by Congress to *establish a minimum age qualification at eighteen for all elections*, … ." *Constitution Annotated*, https://constitution.congress.gov/browse/essay/amdt26-1/ALDE_00001015/.  (emphasis added) The Congressional intent was to establish an age *qualification* each State must adhere to for the right to vote or to otherwise interfere with the States' rights to regulate the time, manner and place of voting. (emphasis added).

There does not appear to be any substantial or meritorious historical evidence that the 26th Amendment sought to eliminate States' ability to legislate age-based distinctions in methods of voting. This is not surprising. Age based voting distinctions have a long history in this country.  In Plymouth Colony, a 1652 law allowed proxy votes for people who could not vote because of an "age disability." Indiana Univ. School of Public and Environmental Affairs, *An Analysis of Laws and Procedures Governing Absentee Registration and Absentee Voting in the U.S., Vol. I.* 19 (1975). Different methods of voting for voters, including older voters, existed in the 20th century, when States had various voting-related provisions that made distinctions based on age. For instance, Rhode Island had a constitutional provision that allowed its legislature to establish special rules for, among other voters, people who were "unable to vote in person" because "of old age." Ch. 1820, § 1, Jan. Sess. (R.I. 1947) (codified at R.I. Const. Art. XXIII (since repealed)); *see also Roberts v. Bd. of Elections*, 129 A.2d 330 (R.I. 1957) (discussing legislation related to this constitutional provision).

These age-based distinctions continued in the years right after the amendment was ratified. Wyoming—less than two years after the amendment was ratified—adopted a provision (similar to Rhode Island's) that someone "who cannot be present at his precinct polling place on election day because of . . . old age . . . may vote by absentee ballot." 1973 Wyo. Sess. Laws ch. 251, § 22.1-135. Texas adopted its provision allowing voters 65 and older to vote by absentee ballot and at the *same time* lowered its voting age to 18 to comply with the 26th Amendment. *See* Act of May 30, 1975, 64th Leg. R.S., ch. 682, §§ 3, 5, 1975 Tex. Gen. Laws 2080, 2082. In 1992, after adopting the 26th Amendment and lowering the voting ages to 18, South Carolina enacted the Absentee provision, albeit 72 instead of 65. In 2009, the South Carolina Supreme Court, quoting *Kramer*, held that "[r]estrictions on the right to vote on grounds *other than* residence, age, and citizenship generally violate the Equal Protection Clause and cannot stand unless such restrictions promote a compelling state interest." *Sojourner v. Town of St. George*, 383 S.C. 171, 176, 679 S.E.2d 181, 185 (2009) (emphasis added).

If the 26th Amendment was generally understood to ban all age-based distinctions in voting, it is inconceivable States would have passed such laws in the wake of that amendment.

**B.    Second and Third Causes of Action—§ 7-15-320(B)(2) does not violate either Equal Protection or the 1st Amendment as applied by Due Process.[29]**

In the first instance, SEC Defendants believe that under *McDonald,* since § 7-15-320(B)(2) does not impact the right to vote but only the claimed right to vote Absentee, the rational relationship test applies. Age is not a suspect class under the 14th Amendment and Plaintiffs have not alleged that it is. Plaintiffs' allegation is if one class of Voters have the right to no-excuse absentee voting based solely on age, the State must extent that right to all Voters otherwise

---

[29] In that the facts and analysis are the same for both causes of action, SEC Defendants are addressing them together.

qualified to vote, without regard to age. Therefore, "[t]he distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end" and will be struck "only if based on reasons totally unrelated to the pursuit of that goal." *McDonald,* 394 U.S. at 809. The Supreme Court has determined that, even in voting matters, in light of the leeway the Constitution grants to States to regulate voting and to enact legislation that classify individuals appearing to be situated similarly differently, the presumption of statutory validity adheres to the actions. *McDonald*, 394 U.S. at 808-809.

The State has a legitimate concern in regulating the manner in which Electors cast their votes.  *See infra* at page 24-26. Even Plaintiffs will concede that in person voting is the most difficult manner of voting to commit voter fraud.[30] Absentee voting is the manner of voting that lends itself most readily to fraud, be it in the acquisition, distribution, harvesting or returning of the ballots. *See Brnovich v. Democratic National Committee, 594 U.S. 647, 685-686 (2021)*(Fraud is a real risk that accompanies mail-in voting … "). There are numerous State and federal statutes (mandatory retirement, Medicare, Social Security, to name a few) that are age-related. An Elderly voter can vote simply by going to her mailbox or asking a friend to drop it in the mail. The Court can take judicial notice of the fact that the Elderly have higher instances of inhibiting illnesses, including sight or mobility issues, and often have transportation issues—either not being able to drive or not having ready access to transportation. It is certainly reasonable for South Carolina to treat the Elderly differently for purposes of Absentee voting.

---

[30] "Fraud occurs in several ways.  Absentee ballots remain the largest source of potential voter fraud. … "Vote buying schemes are far more difficult to detect when citizens vote by mail." *Report of the Comm'n on Fed. Election Reform, Building Confidence in U.S. Elections* p. 46, § 5.2 (Sept. 2005).    https://www.eac.gov/sites/default/files/eac_assets/1/6/Exhibit%20M.PDF   (last checked August 30, 2024).

But even if this Court were to analyses the Plaintiffs' 14th and 1st Amendment challenges under the *Anderson/Burdick* test, *infra*, § 7-15-320(B)(4) passes muster. *Anderson v. Celebrezze*, 460 U.S. 780 (1983) was decided in 1983, after ratification of the 26th Amendment. *Anderson* involved 1st and 14th Amendment challenges to Ohio's election rule requiring independent candidates for President to apply to be on the ballot much earlier than political party Presidential candidates. The *Anderson* Court concluded that constitutional challenges to specific State election laws are not subject to a litmus-paper test and applied a balancing test to see if the burden placed on Ohio voters' freedom to choose candidates was outweighed by the State's interest in setting a different filing deadline for small party candidates. The Court held that while voter's rights are fundamental, "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on a voters' rights to associate or to choose among candidates." *Anderson*, 460 U.S. at 788. The Court also held that, practically, elections must be substantially regulated to be fair, honest and orderly to accomplish the democratic processes. *Id.* (citation omitted). States, including South Carolina, have enacted comprehensive election codes that govern voter qualification and registration, selection and eligibility of candidates and the voting process. *Id.*

In 1992 the Supreme Court affirmed *Anderson* when it addressed a challenge, based on alleged violations of the 1st and 14th Amendments, to Hawaii's statutory election scheme which did not allow for write-in voting. *Burdick v. Takushi*, 504 U.S. 428 (1992). Recognizing that the right to vote is fundamentally significant under the Constitution, the Court determined that "[i]t does not follow, however, that the *right to vote in any manner and the right to associate for political purposes through the ballot are absolute*." *Id.* at 433 (internal citation omitted)(emphasis added).

55176300 v2.doc

*Burdick* held election laws invariably impose some burden upon voters, whether it is registration or qualification requirements, the voting process (including manner of voting), or selection or eligibility of candidates. To have fair, honest and non-chaotic elections, the voting process must have substantial regulation.[31] *Id.* The mere fact that a State's system creates barriers does not itself require the imposition of strict scrutiny. *Id.* at 433-434 (internal citations omitted). Rather, a more flexible standard applies. *Anderson* 460 U.S. at 788-789. When the election law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interest are generally sufficient to justify' the restrictions.'" *Burdick*, 504 U.S. at 434 (internal citation omitted).

This Court must balance South Carolina's constitutional right and duty to regulate elections (time, places, and manner) against the effect its regulation imposes on Voters. As the Supreme Court stated in *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 190 (2008), in election cases the Court has followed the *Anderson/Burdick* balancing approach. Applying the balancing approach here mandates that the SEC Defendants' Motion for Summary Judgment be granted.

It is only when the State's election regulatory scheme imposes an unreasonable burden on a Voter's right protected by the 26th, 14th, or 1st Amendments will the statute be deemed unconstitutional. Section 7-15-320(B)(2), through granting the Elderly voter the additional method of voting, imposes no burden, much less and unreasonable burden, on Voters under 65. When the election law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interest are generally sufficient to justify' the restrictions.'" *Burdick* at 434 (internal citation omitted). The requirement

---

[31] Each code provision, to some degree, impacts a voter's qualifications and ability to register, choice of candidate or the voting process itself. *Id.*

regulating the right to vote must impose a material effect on those subject to the regulation. *Harman* 380 U.S. 528, 541 (1965).

Under the *Anderson/Burdick* balancing test, the Court has to balance the statue's burden on the Plaintiffs versus the State interest the statute promotes. Plaintiffs have not identified any burden § 7-15-329(B)(2) places on them. Merely they have identified an inconvenience—Plaintiffs desire to vote by mail—the way they allege is "most particularly convenient." ECF No. 24, ¶ 6(a). The Complaint merely alleges a speculative not concrete, § 7-15-320(B)(2) "may" abridge Plaintiffs' rights to vote. *See* ECF No. 24, ¶ 6(b) – (d). Plaintiffs inexplicably allege that "Section 7-15-320 bars each plaintiff from voting by absentee ballot because they do not meet the statute's requirements (unless events take a plaintiff out of the country 'for the duration of the early voting period, and during the hours the polls are open on election day.')" ECF No. 24, ¶ 6(c).

As discussed above, § 7-15-320(A) has four non-age related excuses Voters who cannot vote on Election Day or during Early voting may use: (1) employment obligations, (2) attending sick or physically disabled persons; (3) confinement to jail or pretrial facilities; and (4) absence from their county of residence.[32] Section 7-15-320(B) has three non-age related categories allowing Voters to vote by mail: (1) physically disabled; (2) members of the Armed Forces, Merchant Marines, spouses and dependents; and (3) persons admitted to the hospital on Election Day or within four days prior to the election.

Plaintiffs' claim that § 7-15-320 prevents them from voting unless events take them out of the county "for the duration of the early voting period, and during the hours the polls are open on election day" contradicts the plain and unambiguous language of the statute. If they are going to

---

[32] Plaintiff Grant admits that she has voted absentee because she was going to be out of the county on Election Day. Ex. 1, ¶ 4.

be out of the county, depending on whether for work or otherwise, they could vote absentee under § 7-15-320(A)(1) or (4); they could be attending a sick or disabled person and vote pursuant to § 7-15-320(A)(2). If a Plaintiff became disabled, joined the armed forces or were admitted to the hospital, they could vote in accord with § 7-15-320(B)(1), (3) or (4) respectively.

Plaintiffs still can vote in person on Election Day and vote in person during Early voting at any of the polling centers[33] established in the county and vote absentee, in the event they meet one of the statutory exceptions in § 7-15-320(A) or –(B)(1), (3) or (4). The only thing they cannot do is vote Absentee for their convenience. SEC Defendants note that while South Carolina has had Elderly Absentee voting since 1992, in 2022 when the "present" statute (as Plaintiffs state) was passed, the General Assembly added the third method of voting for all Voters—early voting—thus providing all State Voters with more options, times, and places to exercise their franchise. The legitimate State interest in § 7-15-320(B)(2) limiting Absentee voting to the Elderly is driven by the General Assembly's desire to have elections that the citizens have confidence in—those that are orderly and without fraud, where citizens can trust the outcome of elections. Our courts have long recognized that limiting fraud is a valid, non-discriminatory basis for the Legislature to restrict Absentee voting. In *Crawford,* the Supreme Court found that even though, at the time Indiana enacted it Voter ID law, there was no evidence of voter fraud in the state,

> flagrant examples of such fraud in other parts of the country have been documented throughout this Nation's history by respected historians and journalists, that occasional examples have surfaced in recent years, and that Indiana's own experience with fraudulent voting in the 2003 Democratic primary for East Chicago Mayor—though perpetrated using absentee ballots and not in-person fraud—demonstrate that not only is the risk of voter fraud real but that it could affect the outcome of a close election.

---

[33] A CBVRE may establish up to seven early voting centers in a county. S.C. Code Ann. § 7-13-25(D).

55176300 v2.doc

*Crawford,* 553 U.S. at 196. (footnotes omitted) As the Supreme Court recently held in *Brnovich v. Democratic National Committee,* 594 U.S. 647 (2021): "One strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry appropriate weight. Fraud can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome." *Id.,* 594 U.S. at 672.[34]

When the General Assembly initially considered granting the Elderly the privilege of voting Absentee without excuse, one of the concerns was the potential of voter fraud. The contemporaneous expressed legislative concern was that people would use absentee ballots to try to manipulate elections. Ex. 6, *The State "Ballot Compromise Fails",* May 18, 1990. Preventing voter fraud and insuring the integrity of elections and the State's confidence in the election system is still a paramount concern of the General Assembly and was at the time immediately preceding the amendment to § 7-15-320(B)(2) in 2022. *See: Middleton v Andino*, 990 F.3d 768 (2020).[35] While South Carolina has not had significant numbers of cases of fraudulent voting, there have been some.

---

[34] *Brnovich* is a VRA § 2 case challenging an Arizona statute regulating the time, place and manner of casting votes when voters are voting "out-of-precinct." Citing *Crawford,* the Court ruled that the size of the burden imposed by the challenged statute if highly relevant and that "*[m]ere inconvenience is insufficient*" and because every cast vote requires compliance with the voting rules, a "equal 'opportunity' to cast a ballot *must tolerate the 'usual burdens of voting.*'" *Brnovich* 594 U.S. at 669. (internal citation omitted) (emphasis added).

[35] This is a COVID-19 case to § 7-15-320 excuse based absentee voting scheme, seeking an injunction solely for the November 2020 general election. The *Middleton* plaintiffs challenged, *inter alia*, the State's absentee ballot witness requirement and the applicability of the "no excuse" absentee voting only for the Elderly. These were not facial challenges. On May 12, 2020, the General Assembly enacted legislation "allowing all qualified voters to vote by absentee ballot" for the primary and runoff "due to the current state of emergency." *Middleton v. Andino.,* 488 F. Supp. 261, 272 (2020). While the District Court stayed the enforcement of the witness signature during the primary election, the Supreme Court lifted the stay. *See Andino v. Middleton,* 141 S. Ct. 9 (2020)

In 2008, Mayor Christopher Campbell (Eastover, S.C.) was convicted, *inter alia*, of voter fraud for filling out 16 absentee ballots and persuading voter who had not voted to cast them in their own names. https://www.theitem.com/stories/eastover-mayor-gets-18-months-for-voter-fraud,130540; South Carolina EXECUTIVE ORDER NO. 2007-07, https://www.scstatehouse.gov/Archives/ExecutiveOrders/exor0707.htm. Former State Sen. Eugene Carmichael was convicted in 1981 of a vote buying scheme involving distributing absentee, paying for people to vote and collecting and voting the ballots. *U.S. v. Carmichael*, 685 F.2d 901 (4th Cir. 1982).

Originally, South Carolina set the Absentee voting at age 72, but lowered it to 65. As noted above, this is almost uniformly recognized at the "retirement" age, including for federal programs, including generally social security and Medicare. Clearly, South Carolina has legitimate, non-discriminatory[36] basis for limiting Absentee voting only the Elderly, who otherwise are more prone to difficulties in voting in person.

Any perceived "burden" imposed on Plaintiffs, simply because they do not have the option to vote Absentee, given the myriad manners, times and places they can vote, is not material, particularly balanced against the State's legitimate interests discussed above.

The State only allowing Elderly Absentee voting clearly outweighs any minor inconvenience Plaintiffs may suffer because the State has not enacted universal Absentee voting. As discussed above, historically, South Carolinians have exercised the franchise by voting in person on Election Day. Seven of the eight exceptions in § 7-15-320 are necessitated to prevent an otherwise qualified Elector from being denied the right to exercise her franchise on Election Day.

---

[36] Age is not a suspect class nor have Plaintiffs alleged that it is.

Assuming the *Anderson/Burdick* test is applicable to Plaintiffs' challenges to § 7-15-320(B)(2), the Court should find that the States' legitimate, non-discriminatory interests clearly outweigh any minor inconveniences placed on Plaintiffs by not having a universal right to vote absentee by mail without excuse. SEC Defendants Motion for Summary Judgement of Counts 1, II and III should be granted.

### D. This Court lacks subject matter jurisdiction in that Plaintiffs lack standing and the Complaint presents non-justiciable, political questions.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III, Section 2, of the U.S. Constitution limits the jurisdiction of federal courts is limited to deciding "cases" and "controversies" See *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

1. *Standing*. Requiring a plaintiff to have standing to bring an action in federal court "gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017) (*quoting Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014)). "Standing implicates the court's subject-matter jurisdiction and may be challenged in a motion to dismiss under Rule 12(b)(1) …. " *Meyer v. McMaster*, 394 F. Supp.3d 550, 558 (D.S.C. 2019) (internal citation omitted).

For standing to exist, a plaintiff must establish three elements. First, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized…and (b) "actual or imminent, not 'conjectural' or 'hypothetical …. '" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). "Injury in fact" is the "'[f]irst and foremost' of standing's three elements.'" *Meyer*, 394 F. Supp.3d at 559 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-561 (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).

Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be "redressed by a favorable decision." *Id*. at 561 (*quoting Simon*, 426 U.S. at 38, 43). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. at 562.

Because these three elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

      a. <u>Plaintiffs have no injury-in-fact</u>. "[E]ven in a proceeding which [they] prosecute[ ] for the benefit of the public," Plaintiffs must "generally aver an injury peculiar to [themselves], as distinguished from the great body of [their] fellow citizens." *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (*quoting Tyler v. Judges of Court of Registration*, 179 U.S. 405, 406 (1900)). Plaintiffs do not allege an injury that is "concrete and particularized, as well as actual or imminent" but rather one that is "conjectural or hypothetical." *Carney*, 592 U.S. 53, 58 (2020) (internal citation omitted),

"It is without dispute that the right to vote is the most basic of political rights, such that the government's interference with that right may satisfy the injury-in-fact requirement." *Goldman v. Brink*, No. 3:21CV420 (DJN), 2022 WL 2024745, at *8 (E.D. Va. June 6, 2022), aff'd as modified, 41 F.4th 366 (4th Cir. 2022) (*citing Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (internal

citation and quotation marks omitted). "Thus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). However, "only those who 'allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id*. *Baker v. Carr*, 369 U.S. 186, 206 (1962).

Plaintiffs do not allege any "facts showing disadvantage to themselves as individuals". The Complaint simply alleges that they desire to vote by mail—the way they allege is "most particularly convenient." ECF No. 24, ¶ 6(a). Plaintiffs only speculatively allege that § 7-15-320(B)(2) "may" abridge their rights to vote. *See* ECF No. 24, ¶ 6(b) – (d). Plaintiffs inexplicably allege that "Section 7-15-320 bars each plaintiff from voting by absentee ballot because they do not meet the statute's requirements (unless events take a plaintiff out of the country 'for the duration of the early voting period, and during the hours the polls are open on election day.')" ECF No. 24, ¶ 6(c). Yet, some of them have voted Early or voted absentee because they would be out of the county on Election Day.  *See*:  Exs 1, ¶¶ 4, 5; 2, ¶4; and 3¶¶ 4, 7.

As discussed above, § 7-15-320(A) has 4 non-age related excuses Voters who cannot vote on Election Day or during Early voting can use as circumstances warrant: (1) employment obligations, (2) attending sick or physically disabled persons; (3) confinement to jail or pretrial facilities; and (4) absence from their county of residence. Section 7-15-320(B) has 3 non-age related categories allowing Voters to vote by mail: (1) physically disabled; (2) sixty-five years old or older; (3) members of the Armed Forces, Merchant Marines, spouses and dependents; and (4) persons admitted to the hospital on election day or within four days prior to the election.

Plaintiffs' claim that § 7-15-320 bars them from voting absentee unless they are out of the country contradicts the plain and unambiguous language of the statute. Plaintiffs have not alleged facts showing a disadvantage to themselves and have no injury in fact.

  b. <u>Even if there was an injury in fact, it is not traceable to the SEC Defendants.</u> Even if Plaintiffs credibly alleged an "injury in fact" (they did not), it cannot be said that said injury or injuries are "fairly traceable to the challenged action of the [SEC Defendants], and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-561; *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 154 (4th Cir. 2000). Plaintiffs make no factual allegations of wrongdoing against the SEC Defendants. Thus, Plaintiffs' purported injury is not "fairly traceable" to the SEC Defendants.

  c. <u>Plaintiff's allegations are not redressable by a favorable decision.</u> Finally, Plaintiffs also lack standing because they cannot establish "a non-speculative likelihood that the [alleged] injury would be redressed by a favorable decision." *Justice 360 v. Stirling*, 42 F.4th 450, 459 (4th Cir. 2022) (alteration in original). Plaintiff's claims are not redressable by the SEC Defendants because, *inter alia,* the SEC Defendants are representatives of the executive branch of South Carolina government and have no authority to legislate or in any manner amend or change the laws of South Carolina. They can only carry out the laws enacted by the State.

  As discussed *infra*, Plaintiffs has asked for the same right to choose to vote by mail as do the Elderly. That is not relief that this Court has the authority to grant. The Court can strike § 7-15-320(B)(2) allowing the Elderly to vote Absentee, but it cannot legislate. Thus, even a favorable decision will not give the Plaintiffs the relief they request—the right to vote Absentee.

  2. *Nonjusticiable political question properly reserved for the States and Congress.*

Political questions are nonjusticiable and are not cases or controversies defined by Article

III. *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). The Supreme Court set out broad categories that should be considered nonjusticiable political questions in *Baker v. Carr*, 369 U.S. 186, 217 (1962):

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] an unusual need for unquestioning adherence to a political decision already made; [and 6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Clearly, the Constitution as left the time, places and manner of exercising the franchise to the States and Congress. *See* Constitution, Art. I, § 2. Even the 26th Amendment authorizes Congress to enforce its provisions—as discussed above—it has not done so.

Plaintiffs here do not just request the Court to strike § 7-15-320(B)(2), they ask this Court to legislate by issuing a "permanent injunction granting all voters under age 65 the same right to vote by mail ballot afforded to voters over age 65." ECF No. 24, ¶ 22.a.  The decision to grant all voters under the age of 65 the same right to vote by mail without excuse as afforded to the Elder is a non-justiciable political question. The Court should deny Plaintiffs' request and dismiss the case.

### E.    Plaintiffs have failed so state facts sufficient to state a cause of action.

"A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Doosan Mac. Tools Am. Corp. v. Mach. Sols., Inc.,* No. 3:17-CV-00876-JMC, 2018 WL 1376066, at "3 (D.S.C. Mar. 19, Under the Rule 12(b)(6) standard, the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the

plaintiff ....” *Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011), *aff'd,* 482 F. App'x 759 (4th Cir. 2012)(internal citations omitted). However, this rule is “inapplicable to legal conclusions.” *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). “‘[E]lements of a cause of action’ and ‘bare assertions’ do not qualify as well-pled facts, and the Court ‘need not accept as true unwarranted inferences, unreasonable conclusions or arguments.’” *Id.* (*quoting Nemet Chevrolet,* 591 F.3d at 253, 255).

In other words, Plaintiffs must plead “enough facts to state a claim to relief that is plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Where Plaintiffs “have not nudged their claims across the line from conceivable to plausible,” it follows that “their complaint must be dismissed.” *Id.*

Plaintiffs allegations, taking them in the light most favorable to them, are that the State has no right to regulate age in determining the manner in which Electors vote. The Complaint only alleges that Plaintiffs:

- Wish to vote Absentee in an election when it is particularly convenient, ECF No. 24, ¶ 6(b);

- § 7-15-320 bars them from voting unless they are out of the country during Early voting and on Election Day when the polls are open, *Id.,* ¶ 6(c); and

- They may be completely disfranchised during a specific election, if, “for example, such plaintiff leaves the country after the early voting period begins and does not return by Election Day, *Id.*, ¶ 6(d).

These allegations neither comport with Plaintiffs current circumstances nor the law.

As discussed in detail above no Plaintiff has ever failed to exercise his/her franchise because he/she did not have the ability to vote Absentee. Plaintiffs have not alleged 1) that § 7-15-320(B)(2) substantially burdens their right to vote in violation of the 26th, 14th or 1st Amendments

to the Constitution, 2) facts showing a disadvantage to themselves resulting from not having the right to vote Absentee or 3) age is a suspect class.

Even assuming that the right to vote includes the right to choose any available manner of voting to any class of voters established by the State, and it does not, Plaintiffs bare assertions' do not qualify as well-pled facts, particularly not factual allegations sufficient to support their legal contentions under any level of scrutiny the Court must apply in deciding the constitutionality of § 7-15-320(B)(2). *See McEachern v. Gray,* 2015 WL 5089613 *2 (USDC, Florence Div. 2015). Plaintiffs Complaint should be dismissed for failure to state facts sufficient to constitutive a cause of action.

### F.    Plaintiffs' Claims are barred by laches.

Plaintiffs' claims are also barred by the doctrine of laches. Because "[e]xtreme diligence and promptness are required in election-related matters, particularly where actionable election practices are discovered prior to the election …, laches is available in election challenges." 29 C.J.S. Elections § 459 (internal footnotes omitted). To prevail on a laches defense, the SEC Defendants must prove a "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Middleton v. Andino*, 488 F. Supp. 3d 261, 290 (D.S.C. 2020) (*citing Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012)).

Here, laches applies. First, Plaintiffs have lacked diligence in pursuing this action. The Complaint relates to an allegedly unconstitutional law that has been on the books since 1992, yet this action was not initiated until December 21, 2023, and the operative Complaint filed May 30, 2024. Second, SEC Defendants are materially prejudiced in having to defend this law in the middle of a busy general election season, and risk a serious disruption to the orderly election process, when the case could have been brought much earlier. *See, e.g., De La Fuente v. S.C. Democratic*

*Party*, 164 F. Supp. 3d 794, 806 (D.S.C. 2016) (finding putative Presidential candidate failure to "take immediate action" and waiting "until over a month later" to file a Complaint seeking ballot access was unreasonable delay barring relief).

## CONCLUSION

For the above reasons, SEC Defendants' Motion for Summary Judgment should be granted and the case dismissed.

Respectfully Submitted,

*s/ Mary Elizabeth Crum*
Mary Elizabeth Crum (Fed. ID No. 372)
Tracey C. Green (Fed. ID No. 6644)
Michael Reid Burchstead (Fed. ID No. 102967)
Benjamin R. Jenkins IV (Fed. ID No. 14138)
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
Telephone: (803) 799-9800
Email: lcrum@burr.com
Email: tgreen@burr.com
Email: mburchstead@burr.com
Email: bjenkins@burr.com

Thomas W. Nicholson (Fed. ID No. 12086)
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
Email: tnicholson@elections.sc.gov

*Counsel for Defendants Howard Knapp, Dennis Shedd, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley*

August 30, 2024
Columbia, South Carolina