UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Trudy B. Grant, Sarah Krawcheck, Nashonda Hunter, Max Milliken, and Caleb Clark,

Plaintiffs,

v.

Howard Knapp as the Executive Director of the South Carolina Election Commission, Dennis Shedd (Chair), JoAnne Day, Clifford J. Edler, Linda McCall and Scott Moseley, as Members of the South Carolina Election Commission, [1] and Charleston County Board of Elections and Voter Registration,

Defendants.

No.: 2:23-cv-06838-BHH

**NOTICE OF SUPPLEMENTAL AUTHORITY**

The SEC Defendants hereby notify the Court of the below supplemental authority relevant to the portion of its Response to Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 36) and its Motion for Summary Judgment and Memorandum in Support (ECF No. 39).

1. *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*

In *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, the Fourth Circuit considered and rejected voter standing based on allegations that the plaintiff "was personally injured by the State [Election] Board because Maryland allowed otherwise ineligible voters to

[1] S.C. Code Ann. § 7-3-10 created the "State Election Commission." (SEC)—the proper name of the SEC. There is no South Carolina government agency known as the South Carolina Election Commission.

vote, thus diluting her vote." No. 24-1449, 2025 WL 377752, at *4 (4th Cir. Feb. 4, 2025). e The Court held *inter alia* that

> "[A] person's right to vote is 'individual and personal in nature.' " *Gill v. Whitford*, 585 U.S. 48, 65, 138 S.Ct. 1916, 201 L.Ed.2d 313 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)). "Thus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* at 65–66, 138 S.Ct. 1916 (quoting *Baker v. Carr*, 369 U.S. 186, 206, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

*Id.*[2]. The Court found that plaintiffs sought relief "that no more directly and tangibly benefits them than it does the public at large," and thus this was "precisely the kind of undifferentiated, generalized grievance about the conduct of government that fails to confer Article III standing." *Id.*, at *4 (cleaned up). The court concluded that, because the vote dilution complained of "affect[ed] all voters in a State in the same way," the alleged "generalized injury cannot support Article III standing." *Id.*, at *5.

2. *Sharma v. Hirsch*

In *Sharma v. Hirsch*, the Fourth Circuit reaffirmed that States, under the Elections Clause,

> … gained certain rights, including the "broad power" to prescribe the "Times, Places, and Manner" of holding federal elections. *Clingman v. Beaver*, 544 U.S. 581, 586, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005) (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986)). This was a federalist compromise: the Constitution provided basic qualifications which the states could not discard or alter, but otherwise afforded states significant latitude to implement voter qualifications, ensure that elections ran smoothly, that candidates met their constitutional requirements, and that voters were properly informed. *See Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (discussing states' "comprehensive" election codes and that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes").

[2] These principles were discussed in the SEC Defendants' Motion for Summary Judgment and Memorandum in Support. *See* ECF No. 39 at pp. 28-29.

121 F.4th 1033, 1038 (4th Cir. 2024). The Court further stated that the Elections Clause was a recognition that

> [S]tate governments were well equipped to respond to the needs of their electorates. No uniform system of elections would suit both Rhode Island and Virginia equally. For the Founders or Congress to attempt to delve into every minutia of federal elections would be folly. State governments operated closer to the ground and could devise electoral regulations responsive to the different geographic and demographic character of their populaces.

*Id.* (internal citation omitted). The Court concluded its analysis by explaining:

> The nuanced balance of congressional and state authority over electoral procedures provides no green light for federal courts to devise preferences of their own. Indeed, a "dominant purpose of the Elections Clause" was to create a possible pathway for *congressional* preemption and not to otherwise "restrict the ways States enact legislation." [*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 815, 135 S.Ct. 2652 (2015)]. We cannot strain the intent and meaning of state election laws to find constitutional violations where there are none. As the constitutional text highlights, the proper venue for debates over discretionary state election policies remains with Congress, more so than with the federal courts. *See* U.S. Const. art. I, § 4, cl. 1; *see also Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 144 S. Ct. 1221, 1258, 218 L.Ed.2d 512 (2024) (Thomas, J., concurring in part) ("The Framers' considered choice of a nonjudicial remedy is highly relevant context to the interpretation of the Elections Clause.")

*Id.* at 1039.

3. <u>*Election Integrity Project California, Inc. v. Weber*</u>

In *Election Integrity Project California, Inc. v. Weber*, the Ninth Circuit reaffirmed its prior precedent that

> [A] state law or practice that does not incorporate suspect classifications or burden a fundamental right generally "merit[s] no special scrutiny" under the Equal Protection Clause. [*Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018)] (citing *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 806–08, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969)). To the extent a law or practice affects similarly situated non-suspect classes differently, it will survive equal protection review provided it is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *see also Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976) (explaining that ordinary legislative distinctions are "entitled to a strong

> presumption of constitutionality" and will survive rational basis review as long as they are not "arbitrary").

113 F.4th 1072, 1090 (9th Cir. 2024).

Respectfully Submitted,

*s/ Mary Elizabeth Crum*

Mary Elizabeth Crum (Fed. ID No. 372)
Tracey C. Green (Fed. ID No. 6644)
Michael Reid Burchstead (Fed. ID No. 10297)
Benjamin R. Jenkins IV (Fed. ID No. 14138)
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
Telephone: (803) 799-9800
Email: lcrum@burr.com
Email: tgreen@burr.com
Email: mburchstead@burr.com
Email: bjenkins@burr.com

Thomas W. Nicholson (Fed. ID No. 12086)
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
Email: tnicholson@elections.sc.gov

*Counsel for Defendants Howard Knapp, Dennis Shedd, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley*

February 21, 2025
Columbia, South Carolina