IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Trudy B. Grant, Sarah Krawcheck,            )
Nashonda Hunter, Max Milliken,              )
Jordan Mapp,[1] and Caleb Clark,            )
                                            )
                Plaintiffs,                 )
                                            )
v.                                          )        Civil Action No. 2:23-cv-6838-BHH
                                            )
Howard Knapp, as the Executive             )        **ORDER**
Director of the South Carolina             )
Election Commission, Dennis Shedd          )
(Chair), JoAnne Day, Clifford J.           )
Edler, Linda McCall and Scott Moseley,     )
as Members of the South Carolina           )
Election Commission, and Charleston        )
County Board of Elections and Voter        )
Registration,                              )
                                            )
                Defendants.                 )
_____ )

        This matter is before the Court upon Plaintiffs' second amended complaint, which

asserts that section 7-15-320 of the South Carolina Code violates the Twenty-Sixth

Amendment to the United States Constitution and the Equal Protection Clause of the

Fourteenth Amendment, as well as the freedom of speech and freedom of association

protections guaranteed by the First Amendment, because it gives a blanket right to vote by

absentee ballot to all registered South Carolina voters over the age of 65 but not to all

registered South Carolina voters under the age of 65.  (ECF No. 24.)  In connection with

their claims, Plaintiffs seek "a declaratory judgment and permanent injunction granting all

voters under age 65 the same right to vote by absentee mail ballot as that afforded to

---

[1] On July 2, 2024, Plaintiffs moved to drop Jordan Mapp as a party, and the Court granted Plaintiffs' motion. (*See* ECF Nos. 32, 33.)

voters over age 65," along with costs and attorney's fees and other relief that may be deemed proper.  (*Id.* ¶¶ 21, 22.)

On August 1, 2024, Plaintiffs filed a motion for judgment on the pleadings.  (ECF No. 36.)  Defendants Howard Knapp, Dennis Shedd, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley, all of whom are sued in their official capacities with the State Election Commission ("SEC") (collectively, "the SEC Defendants"), filed a response in opposition to Plaintiffs' motion on August 30, 2024, and Plaintiffs filed a reply on September 9, 2024.[2]  (ECF Nos. 41, 44.)  Also on August 30, 2024, the SEC Defendants filed a motion for summary judgment.  (ECF No. 39.)  Plaintiffs filed a response in opposition on September 13, 2024, and the SEC Defendants filed a reply on September 20, 2024.  (ECF Nos. 46, 47.)  On February 21, 2025, the SEC Defendants filed supplemental exhibits and supplemental authority.  (ECF Nos. 52, 53.)  The Court held oral argument on the pending motions on February 24, 2025.

Now, having thoroughly considered the parties' briefs and their oral arguments, and having carefully studied the relevant case law, the Court denies Plaintiffs' motion and grants the SEC Defendant's motion.[3]

---

[2] On September 9, 2024, Plaintiffs filed a Rule 12(d) notice, explaining that the Court can treat their Rule 12(c) motion as a Rule 56 motion if the Court does not exclude the matters outside the pleadings that the SEC Defendants presented in response to Plaintiffs' motion. (*See* ECF No. 44 at 1, n. 1; ECF No. 45.) In light of Plaintiffs' Rule 12(d) notice, the Court will treat Plaintiffs' motion as a Rule 56 motion for summary judgment.

[3] Although Defendant Charleston County Board of Elections and Voter Registration filed an answer to Plaintiffs' amended complaint, it does not appear that this Defendant ever filed an answer to Plaintiffs' second amended complaint.  (*See* ECF No. 13.)  Nor does it appear that this Defendant filed anything in opposition to Plaintiffs' motion or otherwise joined in the SEC Defendants' motion for summary judgment.

## BACKGROUND

The Twenty-Sixth Amendment to the United States Constitution, which was ratified in 1971,[4] provides as follows: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."  U.S. Const. amend. XXVI, § 1.

In this action, Plaintiffs, who are registered South Carolina voters under the age of 65, assert that section 7-15-320(B)(2) of the South Carolina Code violates the Twenty-Sixth Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment and the freedom of speech and association protections guaranteed by the First Amendment, because it does not treat voters over the age of 65 the same as voters under the age of 65.[5]  Ultimately, the success of Plaintiffs' claims depends on whether this state law denies or *abridges* Plaintiffs' *right to vote* or whether, as urged by Defendants, it merely extends a privilege, convenience, or accommodation to those older than 65 and not to those

---

[4] The legislative history underlying the passage of the Twenty-Sixth Amendment indicates that its primary purpose was to lower the voting age from 21 to 18.  *See, e.g.*, Yael Bromberg, Youth Voting Rights and the Unfulfilled Promise of the Twenty-Sixth Amendment, 21 U. PA. J. Const. L. 1105, 1131 (2019) ("Taken as a whole, the narrative of the thirty-year legislative effort beginning with the first proposal for ratification in 1942 in light of young people's involvement in World War II, and ending in 1971 in light of young people's involvement in the Second Reconstruction and the Draft, is a story about the nation's struggle to form a more perfect union by recognizing the critical voice that young people offer in a healthy constitutional democracy."); Eric S. Fish, Note, The Twenty-Sixth Amendment Enforcement Power, 121 Yale L. J. 1168, 1170 (2012) (explaining that the Twenty-Sixth Amendment is "conventionally understood' as a "narrowly tailored response to the rise of youth activism in the 1960s and especially to the Vietnam War," but urging a broader interpretation of the amendment); 1 Bruce Ackerman, We the People: Foundations 91 (1991) (explaining that the Twenty-Sixth Amendment was swiftly passed because its proponents had a narrow object, i.e., simply to change the voting age from 21 to 18).

[5] In response to Defendants' motion for summary judgment, however, Plaintiffs assert that "[a]lthough Plaintiffs' Complaint pleaded the Equal Protection Clause and 1st Amendment as separate causes of action, they really belong together as a unified body of law protecting the right to vote."  (ECF No. 46 at 3.)

younger than 65.[6]

As to the specific South Carolina law at issue, section 7-15-320 of the South

Carolina Code, which is titled "Persons qualified to vote by absentee ballot," provides the

following:

> (A) Qualified electors in the following categories who are unable to vote during early voting hours for the duration of the early voting period, and during the hours the polls are open on election day, must be permitted to vote by absentee ballot in an election:
>
>> (1) persons with employment obligations who present written certification of the obligations to the county board of voter registration and elections;
>>
>> (2) persons who will be attending sick or physically disabled persons;
>>
>> (3) persons confined to a jail or pretrial facility pending disposition of arrest or trial; or
>>
>> (4) persons who are going to be absent from their county of residence.
>
> (B) Qualified electors in the following categories must be permitted to vote by absentee ballot in an election, regardless of whether the elector is able to vote during early voting hours for the duration of the early voting period, and during the hours the polls are open on election day:
>
>> (1) physically disabled persons;
>>
>> (2) persons sixty-five years of age or older;
>>
>> (3) members of the Armed Forces and Merchant Marines of the United States, their spouses, and dependents residing with them; or
>>
>> (4) persons admitted to hospitals as emergency patients on the day of an election or within a four-day period before the election, as provided in Section 7-15-330.

---

[6] Plaintiffs admit that registered South Carolina voters under the age of 65 have the option to vote in person on Election Day or during a specified early voting period, *see* S.C. Code § 7-13-25, and that registered South Carolina voters under the age of 65 can vote by absentee ballot if they satisfy one (or more) of the seven non-age-based categories outlined in S.C. Code § 7-15-320.  (ECF No. 24 ¶¶ 12, 14.)

S.C. Code § 7-15-320 (hereinafter referred to as "South Carolina's absentee voting law").[7] Thus, South Carolina's absentee voting law carves out eight categories of voters who are permitted to vote by absentee ballot in an election. At issue in this case is section 7-15-320(B)(2), which permits "persons sixty-five years of age or older" to vote by absentee ballot regardless of any other circumstances. S.C. Code. § 7-15-320(B)(2).

Also of relevance to this case, the Elections Clause, as set forth in Article I, section 4 of the United States Constitution, provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of ch[oo]sing Senators." U.S. Const., Art. I, § 4, cl. 1. In addition, the South Carolina Constitution provides that the "Right of Suffrage" "shall be protected by laws regulating elections . . . ." S.C. Const., Art. II, § 1. Section 10 further provides that South Carolina's General Assembly "shall regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, . . . and enact other provisions necessary to the fulfillment and integrity of the election

---

[7] Prior to 1953, South Carolina voters could only vote in person on Election Day. However, in 1953, after World War II and during the Korean War, South Carolina first allowed absentee voting for individuals serving outside the country in the United States Armed Forces, Merchant Marines, the American Red Cross, United Service Organization, or United States Government. *See* 1953 S.C. Acts No. 329.

In 1992, South Carolina's General Assembly enacted an exception from in-person voting for people aged 72 and older, which allowed them the choice of voting in person or by absentee ballot. 1992 S.C. Acts No. 489, § 1. Then, in 1995, the General Assembly lowered that age to 65, where it remains today. 1995 S.C. Acts No. 80, § 1.

Additionally, in 2020, in response to a lawsuit and the COVID-19 pandemic, the General Assembly amended the absentee voting law to allow all registered South Carolina voters, regardless of age or circumstance, to vote absentee, but this applied only to the primary elections of 2020. 2020 S.C. Acts No. 133, § 2A; *Bailey v. South Carolina Election Commission*, 430 S.C. 268, 844 S.E.2d 390 (2020).

Finally, in 2022, the General Assembly adopted a full-fledged early voting law, which allows all registered South Carolina voters to cast their ballots, without regard to age or circumstance, during an early voting period ("from Monday through Saturday for the two-week period immediately preceding an election") at a designated early voting center. *See* 2022 S.C. Acts No. 150, §, codified as S.C. Code Ann. § 7-13-25 (2023) (hereinafter referred to as "South Carolina's early voting law").

process." *Id.* Art. II, § 10.

## STANDARD OF REVIEW

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## ANALYSIS

In their motion, Plaintiffs assert that "the question in this case is whether S.C. Code § 7-15-320, which gives voters over age 65 a blanket right to vote absentee while denying that same right to voters under age 65, 'denies or abridges' the right to vote on account of age in violation of the 26th Amendment of the Constitution of the United States of America." (ECF No. 36-1 at 5.) According to Plaintiffs, "the Supreme Court has made it clear that the words "abridge or deny" in the voting amendments of the Constitution mean *no discrimination*."[8] (*Id.* (emphasis in original).) Plaintiffs further assert that they have standing to sue because they "wish to have the same opportunity to vote by mail as voters

---

[8] In support of this assertion, Plaintiffs point to the Supreme Court's decision in *Reno v. Bossier Parish School Board*, where the Court considered whether § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, prohibited preclearance of a redistricting plan enacted with a discriminatory but nonretrogressive purpose. 528 U.S. 320 (2000).

over age 65, but are denied this right by South Carolina's absentee voting law."[9]  (*Id.* at 8.)

In support of their standing argument, Plaintiffs cite, among other cases, *Harmon v. Forsenius*, 380 U.S. 528 (1965); *Gray v. Snaders*, 372 U.S. 368 (1964); *Baker v. Carr*, 369 U.S. 186 (1962); and *303 Creative, LLC v. Elenis*, 600 U.S. 570 (2023).

Plaintiffs also urge the Court to consider the Twenty-Sixth Amendment in light of the other amendments that expanded the right to vote, namely, the Fifteenth, Nineteenth, and Twenty-Fourth Amendments to the United States Constitution.  (*See* ECF No. 36-1 at 4-5, 11-12.)  Plaintiffs acknowledge that the United States Supreme Court has not directly addressed the Twenty-Sixth Amendment,[10] but Plaintiffs urge the Court to follow two state supreme courts (California and Colorado) that have addressed the amendment[11] rather than two federal circuit courts (the Fifth and Seventh Circuits) that have addressed the amendment (and have done so specifically in connection with states' age-based absentee voting laws).  (*See id.* at 12-15) (citing *Jolicoeur v. Mihaly*, 488 P.2d 1 (Cal. 1971); *Colorado*

---

[9]  Plaintiffs allege that they "wish to vote by absentee ballot in any election where that is particularly convenient, especially in any election where such plaintiff may be unable to vote at all except by absentee ballot."  (ECF No. 24 ¶ 6(b).)

[10]  Plaintiffs note that the Supreme Court has summarily affirmed a three-judge panel's decision finding a Twenty-Sixth Amendment violation in a county's policies regarding student residency voting rules.  *United States v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978), *aff'd Symm v. United States*, 439 U.S. 1105 (1979).  (*See* ECF No. 36-1 at 12, n. 17.)

Additionally, in their reply brief in support of their motion, and in their response in opposition to the SEC Defendants' motion, Plaintiffs point to the Supreme Court's recent decision in *Republican National Committee v. Mi Familia Vota*, No. 24A164, 2024 WL 3893996 (Aug. 22, 2024).  After review, however, the Court notes that this case involves provisions of the National Voter Registration Act and the Materiality Provision of the Civil Rights Act of 1964 and does not involve a constitutional challenge under the Twenty-Sixth, Fourteenth, or First Amendments.

[11]  In *Jolicoeur*, the court determined that a California law that required unmarried minors to register to vote at their parents' residence was materially burdensome and unduly handicapped the right to vote.  488 P.2d 1.  In *Colorado Project-Common Cause*, the court struck a Colorado statute that prohibited voters between the ages of 18 and 20 from participating in an initiative voting process.  Thus, both of these state cases involved readily distinguishable facts, as Plaintiffs in this case do not contend that South Carolina's absentee voting law places a burden on them or prohibits them from exercising the franchise.

*Project-Common Cause v. Anderson*, 495 P.2d 220 (Colo. 1972); *Texas Dem. Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 1124 (2021); and *Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020), *cert. denied*, 141 S.Ct. 2798 (2021).)

In response to Plaintiffs' motion and in their cross-motion for summary judgment, the SEC Defendants assert that the "right to vote" is "the ability to cast one[']s vote without material burden and have it count," and the SEC Defendants further contend that the "right to vote" "does not extend to the manner of voting, the regulation of which is left to the States." (ECF No. 39-7 at 10.) To that end, the SEC Defendants contend that the Supreme Court, in *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), "established the meaning of the phrase 'right to vote' in the context of absentee voting." (ECF No. 39-7 at 10.) The SEC Defendants state: "*McDonald* stands for the proposition that the right to vote is the right to exercise the franchise, not the manner in which it is exercised." (*Id.* at 13.) According to the SEC Defendants, "[t]he adoption of § 7-15-320(B)(2) did not deny the right to vote to any Voter. Rather, it extended the *manner* of voting to the Elderly." (ECF No. 41 at 4 (emphasis added).)

In their motion for summary judgment, the SEC Defendants also argue that the Court lacks subject matter jurisdiction because Plaintiffs lack standing and the complaint presents a non-justiciable political question. (ECF No. 39-7 at 27.) With regard to standing, the SEC Defendants contend that Plaintiffs do not allege an injury-in-fact because they merely allege "that they desire to vote by mail–the way they allege is 'most convenient,'" and because they "only speculatively allege that § 7-15-320(b)(2) 'may' abridge their rights to vote." (*Id.* at 29.) The SEC Defendants further contend that, even if Plaintiffs do allege an injury-in-fact, it is not traceable to the SEC Defendants, and a

favorable decision will not redress their alleged injury. (*Id.* at 30.) Lastly, the SEC Defendants assert that Plaintiffs' request for a permanent injunction permitting *all* voters to vote by absentee ballot is a non-justiciable political question because Plaintiffs are, in effect, asking this Court to legislate.[12] (*Id.* at 31.)

As an initial matter, the Court is not convinced by the SEC Defendants' standing and political question arguments. Rather, the Court agrees with Plaintiffs that they have standing as voters under the age of 65 to bring an action challenging the constitutionality of § 7-15-320(b)(2). *See*, *e.g.*, *Baker v. Carr*, 369 U.S. 186, 204-08 (1962); *Goldman v. Brink*, No. 3:21-cv-420 (DJN), 2022 WL 2024745, *8 (E.D. Va. 2022), *affirmed as modified*, 41 F.4th 366 (4th Cir. 2022) (quoting *Gill v. Whitford*, 585 U.S. 48, 65-66 (2018)) ("Thus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to use' to remedy that disadvantage.").

Likewise, the Court disagrees with Defendants that this case presents a non-justiciable political question. *See Baker*, 369 U.S. at 210-25. Stated plainly, courts have been called upon to resolve the types of challenges to states' voting laws that are present in this case, and is no lack of judicially discoverable and manageable standards for resolving these types of challenges. *See*, *e.g.*, *id.* at 226 ("Judicial standards under the Equal Protection Clause are well developed and familiar, and it has been open to courts since the enactment of the Fourteenth Amendment to determine, if on the particular facts they must, that a discrimination reflects no policy, but simply arbitrary and capricious

---

[12] The SEC Defendants also assert that Plaintiffs' second amended complaint fails to plead sufficient facts to state a plausible claim and that Plaintiffs' claims are barred by the doctrine of laches. (ECF No. 39-7 at 31-34.) The Court is not convinced by either of these arguments.

action.").

Next, turning to Plaintiffs' constitutional challenges to section 7-15-320(b)(2) of the South Carolina Code, the Court notes that, at first blush, the simplicity of Plaintiffs' argument is alluring.  As Plaintiffs note, section 7-15-320(b)(2) draws a distinction based solely on age, whereas the Twenty-Sixth Amendment plainly states that a citizen's right to vote (so long as that citizen is 18 years of age or older) "shall not be *denied or abridged . . . on account of age*."  U.S. Const. amend. XXVI, § 1 (emphasis added).  That being said, the Court also notes that "[t]he Twenty-Sixth Amendment has received nowhere near the amount of judicial attention as other voting-rights causes of action."  *Allen v. Waller County, Texas*, 472 F.3d 351, 363 (S.D. Tex. 2020); *see also Lee v. Virginia State Bd. of Elections*, 188 F. Supp.3d, 577 609, n. 18 (E.D. Va. 2016) (stating that "there is a scarcity of caselaw involving Twenty-Sixth Amendment claims based on an alleged denial or abridgement of the right to vote"); *Texas Dem. Party*, 961 F.3d at 408 ("The Twenty-Sixth Amendment is not a major player in federal litigation.")  Additionally, as the Fourth Circuit Court of Appeals cautioned in *Lee*, it is "far from clear that the Twenty-Sixth Amendment should be read to create a cause of action that imports principles from Fifteenth-Amendment jurisprudence." 843 F.3d at 607.  Thus, despite the alluring simplicity of Plaintiffs' argument, the Court finds that the analysis is, in fact, a bit more complicated.[13]

---

[13] As an example, the Court notes that it is difficult to nail down the parties' positions regarding the appropriate level of scrutiny for Plaintiffs' claims.  In their motion, Plaintiffs do not even identify a level of scrutiny. (*See* ECF No. 36-1.)  After the SEC Defendants point this out in their response (ECF No. 41 at 11), however, Plaintiffs assert in reply, "[i]f a standard must be selected, it is obviously the 'compelling interest' standard."  (ECF No. 44 at 3.)  Plaintiffs further state that when a right is enshrined in the Constitution, the standard of review is strict scrutiny.  (*Id.*)

On the other hand, the SEC Defendants argue that the rational relationship test applies to Plaintiffs' Twenty-Sixth Amendment claim and that the *Anderson/Burdick* balancing test applies to Plaintiffs' Equal Protection and First Amendment claims.  (ECF No. 39-7 at 11, 20-23; ECF No. 41 at 12.)  Defendants also note that age is not a suspect class, and Plaintiffs do not contend it is.  (ECF No. 39-7 at 19, 26 n. 4.)  *See*

As Defendants point out in their briefing, the Supreme Court, in *McDonald,* distinguished between "the right to vote" and the "right to vote absentee," although it did so before the Twenty-Sixth Amendment was ratified.  In *McDonald*, pretrial inmates in Illinois challenged an Illinois law that made absentee voting available to, among others, physically incapacitated individuals.  394 U.S. at 804.  When the pretrial inmates' applications for absentee ballots were denied, they filed suit alleging that they were unconstitutionally excluded from the law's coverage in violation of the Equal Protection Clause.  *Id.* at 805.  The Court, in evaluating the issue, first considered "how stringent a standard to use in evaluating the classifications made" under the Illinois law.  *Id.* at 806.  The Court noted that "while the 'States have long been held to have broad powers to determine the conditions under which the right to suffrage may be exercised,' [ ] we have held that once the States grant the franchise, they must not do so in a discriminatory manner."  *Id.* at 807 (quoting *Lassiter v. Northampton County Bd. of Elections*, 383 U.S. 663 (1966), and *Carrington v. Rash*, 380 U.S. 89 (1965)); *see also Allen*, 472 F. Supp.3d at 360 ("A discriminatory burden is not shown when a voting practice results in a mere disparity of convenience.") (citing *Lee*, 843 F.3d at 600-01).   The *McDonald* Court further remarked that "a careful examination" is "especially warranted where lines are drawn on the basis of wealth or race, [ ] two factors which would independently render a classification highly suspect and thereby demand a more exacting judicial scrutiny."  *Id.*  Ultimately, the Court did not find "[s]uch an exacting approach" required, noting that: (1) "the distinctions made by Illinois' absentee

---

*also Gregory v. Ashcroft,* 501 U.S. 452, 470 (1991) ("Petitioners are correct to assert their challenge at the level of rational basis.  This Court has said repeatedly that age is not a suspect classification under the Equal Protection Clause.") (internal citations omitted).

provisions are not drawn on the basis of wealth or race," and (2) "there is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote." *Id*. The Court further explained:

> It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, *which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise*; nor, indeed, does Illinois' Election Code so operate as a whole, for the State's statutes specifically disenfranchise only those who have been convicted and sentenced, and not those similarly situated to appellants.

*Id*. at 807-08 (emphasis added); *cf. Goosby v. Osser*, 409 U.S. 512 (1973) (concluding that *McDonald* did not foreclose the petitioners' challenge to a Pennsylvania statutory scheme because, unlike the law at issue in *McDonald*, the Pennsylvania scheme *absolutely prohibited* the plaintiffs from voting); *O'Brien v. Skinner*, 414 U.S. 524 (1974) (finding that the New York statutes at issue operated as a severe restriction that created an onerous burden on the right to vote where the plaintiffs were not allowed to use the absentee ballot and were denied any other means of casting their vote).

In *McDonald*, the Court explained that "the more traditional standards" applied to the equal protection claims at issue, stating: "[t]he distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." 394 U.S. at 808-09. The Court ultimately found no support for the plaintiffs' constitutional challenge to the Illinois absentee voting provisions, explaining how it was ironic that it was "Illinois' willingness to go further than many States in extending the absentee voting *privileges* . . . that has provided appellants with a basis for arguing that the

provisions operate in an invidiously discriminatory fashion to deny them a *more convenient method of exercising the franchise*." *Id*. at 811 (emphasis added).

In *Texas Dem. Party*, the Fifth Circuit Court of Appeals specifically addressed the constitutionality of a Texas statute that allows mail-in voting for voters at least 65 years of age but requires younger voters to satisfy certain conditions. 978 F.3d 168, 174. The court first evaluated the scope of the Twenty-Sixth Amendment's protection and considered the Supreme Court's decision in *McDonald,* among other sources, in determining whether the Texas statute "abridged*"* the right to vote. *Id*. at 184-88. The court explained: "the right to vote in 1971 did not include the right to vote by mail," and before the Twenty-Sixth Amendment, "the Supreme Court held that the right to vote was not 'denied' when there was no indication that the challengers were 'in fact absolutely prohibited from voting.'" *Id*. at 188 (quoting *McDonald*, 394 U.S. at 807-08). As to the meaning of "abridge," the court held that "an election law abridges a person's right to vote for the purposes of the Twenty-Sixth Amendment only if it makes voting *more difficult* for that person than it was before the law was enacted or enforced." *Id*. at 190-91 (emphasis in original). The court explained:

> Abridgment of the right to vote applies to laws that place a barrier or prerequisite to voting, or otherwise make it more difficult to vote, relative to the baseline.
>
> On the other hand, a law that makes it easier for others to vote does not abridge any person's right to vote for the purposes of the Twenty-Sixth Amendment. That is not to say that a state may always enact such a law, but it does not violate the Twenty-Sixth Amendment.

*Id*. at 191. The Fifth Circuit concluded that "the Texas Legislature's conferring a privilege to those at least age 65 to vote absentee did not deny or abridge younger voters' rights who were not extended the same privilege." *Id*. at 192. Thus, the Fifth Circuit found that

the Texas law did not violate the Twenty-Sixth Amendment. *Id.* at 193.

In *Tully v. Okeson*, the Seventh Circuit Court of Appeals also relied on *McDonald* when evaluating Twenty-Sixth Amendment and Equal Protection challenges to an Indiana law that permitted voters over age 65 to vote by absentee ballot. 977 F.3d 608. The Seventh Circuit explained that the claims at issue hinged on this question: "what is the 'right to vote?'" *Id.* at 611. The court further explained that the Supreme Court answered that question in *McDonald* and "told us that the fundamental right to vote does not extend to a claimed right to cast an absentee ballot."[14] *Id.* at 611 (citing 394 U.S. at 807); *see also id.* at 613, *and Tex. Dem. Party*, 978 F.3d at 185 ("Understanding what the right to vote meant at the time the Twenty-Sixth Amendment was ratified in 1971 is certainly assisted by the 1969 *McDonald* decision."). The Seventh Circuit explained in *Tully*:

> In this case, we too are reviewing an absentee-voting statute that "make[s] voting more available to some groups"—namely, voters over sixty-five. And even as applied right now, during a pandemic, the statute does not "impact[ Plaintiffs'] ability to exercise the fundamental right to vote" or "absolutely prohibit[ Plaintiffs] from voting"; only the pandemic is potentially guilty of those charges.
>
> If Indiana's law granting absentee ballots to elderly voters changed or even disappeared tomorrow, all Hoosiers could vote in person this November, or during Indiana's twenty-eight-day early voting window, just the same. *Consequently, "at issue [i]s not a claimed right to vote" but a "claimed right to an absentee ballot."* And for that reason, Plaintiffs' claim under the Twenty-Sixth Amendment, which only protects the right to vote, is unlikely to succeed.

977 F.3d at 614 (emphasis added) (internal citations omitted); *see also id.* at 613 n. 3 (outlining additional Supreme Court cases that reiterate the principal that the right to vote

---

[14] The Seventh Circuit was also guided by the fact that "the Constitution explicitly grants states the authority to prescribe the manner of holding federal elections." *Id.* at 611 (citing U.S. Const., Art. I, § 4.)

means the ability to cast a ballot and not the right to do so in a preferred manner).

After careful review of the relevant case law and after much consideration, this Court falls in line with the Fifth and the Seventh Circuit Courts of Appeals and concludes that South Carolina's absentee voting law does not deny or abridge Plaintiffs' right to vote in violation of the Twenty-Sixth Amendment.[15]  Stated simply, like in *McDonald*, the Court finds that it is not the right to vote that is actually at issue here; rather, it is Plaintiffs' wish to vote by absentee ballot for convenience.  *See McDonald*, 394 U.S. at 807.  The Court is mindful of the fact that the Constitution expressly permits states to prescribe the manner of holding elections, and here, the Court finds that South Carolina's absentee voting law merely extends a privilege, convenience, or accommodation to those older than 65.[16]  *See Texas Dem. Party*, 978 F.3d at 192 ("[T]he Texas Legislature's conferring a *privilege* to those at least age 65 to vote absentee did not deny or abridge younger voters' rights who were not extended the same privilege.") (emphasis added).  Importantly, South Carolina's absentee voting law does not absolutely prohibit or in any way deny Plaintiffs the exercise of the franchise.[17]  Furthermore, it does not impose any burden on Plaintiffs, let alone an onerous burden (nor do they contend it does).  In all, South Carolina's absentee voting law does not impact Plaintiffs' fundamental right to vote, which "means the ability to cast a

---

[15]  Because the Court finds no denial or abridgement of the right to vote under the Twenty-Sixth Amendment, the Court need not apply any particular level of scrutiny for purposes of Plaintiffs' Twenty-Sixth Amendment claim.  *See*, .*e.g.*, *Texas Dem. Party*, 978 F.3d at 194 ("[B]y concluding that no denial or abridgment of the right to vote under the Twenty-Sixth Amendment ever occurred, we had no denial or abridgement to scrutinize.").

[16] Of course, the privilege of absentee voting is also extended to those younger than 65 who meet one or more of the other seven categories set forth in section 7-15-320.

[17]  Indeed, information before the Court indicates that all Plaintiffs voted in the most recent election. (*See* ECF No. 52.)

ballot, but not the right to do so in a voter's preferred manner, such as by mail." *Tully*, 977 F.3d at 613. Thus, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' first cause of action because section 7-15-320(b)(2) of the South Carolina Code does not violate the Twenty-Sixth Amendment.

Turning next to Plaintiffs' Equal Protection and First Amendment claims, the Court first considers the appropriate standard of review. As previously mentioned, in *McDonald*, the Supreme Court applied a "less exacting" approach and considered whether the distinctions drawn by the Illinois legislature bore "some rational relationship to a legitimate state end." 394 U.S. at 808. The Court did so because: (1) the distinctions drawn by the state were not drawn on the basis of wealth or race and (2) nothing indicated that the statutory scheme impacted the ability to exercise the fundamental right to vote. *Id.* at 807. The Court ultimately found that, because there was "nothing to show that a judicially incapacitated, pretrial detainee is *absolutely prohibited* from exercising the franchise," the distinctions drawn by the Illinois legislature were reasonable, and the legislature's failure to extend the absentee voting privileges "hardly seems arbitrary, particularly in view of the many other classes of Illinois citizens not covered by the absentee provisions, for whom voting may be extremely difficult, if not practically impossible." *Id.* at 809-10 (emphasis added); *cf. Am. Party of Tex. v. White*, 415 U.S. 767 (1974) ("[P]ermitting absentee voting by some classes of voters and denying the privilege to otherwise qualified voters in similar circumstances, without affording a comparable alternative means to vote, is an arbitrary discrimination violative of the Equal Protection Clause.").

In *Texas Dem. Party*, when remanding the matter for consideration of potential equal protection questions, the Fifth Circuit discussed the concept of levels of scrutiny without

deciding which level of scrutiny should apply. *See* 978 F.3d at 193. The Fifth Circuit noted that it was reluctant to apply *McDonald*'s rational basis review because *McDonald* was decided before the Twenty-Sixth Amendment was ratified, such that the Court in *McDonald* did not consider the potential that the same heightened analysis that applied to classifications based on race and wealth might apply to a classification based on age. *Id.* The court in *Texas Dem. Party* did not, however, say that rational basis scrutiny would be incorrect,[18] but it also indicated that other courts have found noteworthy reasons for applying what is known as the *Anderson*/*Burdick* analysis.[19]

In *Tully*, the Seventh Circuit applied rational basis review when addressing the plaintiffs' Equal Protection claim. 977 F.3d at 615 ("Because Indiana's absentee-voting scheme does not impact Plaintiffs' fundamental right to vote, *McDonald* commands that rational-basis review applies."). The court also noted, however, that regardless of whether it employed rational basis review or the *Anderson*/*Burdick* anaysis, the result was the same. *Id.* In attempting to harmonize the *McDonald* and *Anderson*/*Burdick* frameworks, the *Tully* court found that "all election laws affecting the right to vote are subject to the *Anderson*/*Burdick* test, but election laws that do not curtail the right to vote need only pass rational-basis scrutiny." *Id.* at 616.

The court in *Tully* found that Indiana's absentee-voting scheme passed rational basis

---

[18] The court in *Texas Dem. Party* did indicate that it saw no authority to support the application of strict scrutiny analysis. 978 F.3d at 193.

[19] *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). In *Crawford v. Marion County Election Board*, the Supreme Court succinctly framed the *Anderson*/*Burdick* balancing-of-interests test by stating: "a court evaluating a constitutional challenge to an election regulation [must] weigh the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by its rule.'" 553 U.S. 181, 190 (2008) (quoting *Burdick*, 504 U.S. at 434, and *Anderson*, 460 U.S. at 789) (internal quotation marks omitted).

scrutiny, noting that "[i]n wielding its 'broad authority to regulate the conduct of elections, including federal ones,' Indiana has an undeniably legitimate interest in preventing voter fraud and 'other abuses' that are 'facilitated by absentee voting.'" *Id.* at 616-17. The court also found that Indiana's decision to permit absentee voting by "only those Hoosiers who are most likely to benefit from it bears a clearly rational relationship to that interest in curbing the dangers of unfettered absentee voting." *Id.*

Additionally, when applying the *Anderson*/*Burdick* test, the *Tully* court noted that "[t]he Supreme Court in *Burdick* acknowledged the fundamental nature of the right to vote but recognized that it does not follow 'that the right to vote in any manner . . . [is] absolute.'" *Id.* at 617 (quoting *Burdick*, 504 U.S. at 43). The court ultimately found:

> On balance, Indiana's legitimate interests in ensuring safe and accurate voting procedures are sufficient to outweigh any limited burden on Hoosiers' right to vote as they choose caused by the State's restricted absentee voting scheme. We are mindful that Indiana's decision to accommodate some voters by permitting absentee voting "is an indulgence—not a constitutional imperative that falls short of what is required." [ ] And we reiterate that "[o]ne less-convenient feature does not an unconstitutional system make."

*Id.* (internal citations omitted) (quoting *Crawford*, 533 U.S. at 209, and *Luft v. Evers*, 963 F.3d 665, 675 (7th Cir. 2020)).

Here again, the Court finds the Seventh Circuit's analysis particularly compelling. Thus, as in *Tully*, the Court finds that rational basis review applies to Plaintiffs' Equal Protection and First Amendment claims because Plaintiffs are challenging a law that does not affect their fundamental "right to vote."[20] *See McDonald*, 394 U.S. at 807; *Tully*, 977

---

[20] As the *Tully* court noted, "*Anderson* and *Burdick*, however, involved very different situations where the right to vote protected by the Fourteenth Amendment *was* at stake." 977 F.3d at 615 (emphasis in original). In those cases, therefore, the Court employed a balancing test that weighed "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the

18

F.3d at 615.  Under rational basis review, South Carolina's law must "bear some rational relationship to a legitimate state end." *McDonald*, 394 U.S. at 809.  After consideration, the Court finds that South Carolina's absentee voting law passes the low hurdle of rational basis scrutiny because South Carolina has a legitimate interest in preventing voter fraud and in ensuring legitimate, orderly elections.  In other words, the South Carolina General Assembly's decision to limit absentee voting to certain categories of voters, including those over the age of 65, bears a rational relationship to South Carolina's "interest in curbing the dangers of unfettered absentee voting."  *Tully*, 977 F.3d at 616-17.

Furthermore, as in *Tully*, the Court also finds that South Carolina's absentee voting law passes muster under the *Anderson*/*Burdick* balancing test.  As the Supreme Court emphasized in *Anderson* and in *Burdick*, "[e]lection laws will invariably impose some burden upon individual voters.  Each provision of a code, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects–at least to some degree–the individual's right to vote . . . .'"  *Burdick*, 504 U.S. at 433 (quoting *Anderson*, 460 U.S. at 788).

Here, however, as the SEC Defendants point out in their briefing, Plaintiffs have not identified any burden that South Carolina's absentee voting law places upon them.  Instead, they have merely alleged an inconvenience or, stated differently, a preference for a more convenient manner of voting.  Even assuming that this identified inconvenience (or preference) amounts to a burden, in weighing that burden against South Carolina's legitimate interest in regulating the manner in which votes are cast to protect against the

---

burden imposed by its rule."  *Anderson*, 460 U.S. at 789.

19

heightened potential for fraud that goes along with absentee voting, the Court finds that, on balance, South Carolina's legitimate interests in assuring the integrity of elections by avoiding unfettered access to absentee voting outweighs any limited burden placed on Plaintiffs. *See also Crawford*, 553 U.S. at 209 ("That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence–not a constitutional imperative that falls short of what is required.") (Scalia, J., concurring).

For the foregoing reasons, therefore, the Court finds that, regardless of whether it is reviewed under a rational basis standard or the *Anderson/Burdick* balancing-of-interests test, South Carolina's absentee voting law passes muster. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' Equal Protection and First Amendment claims.

In conclusion, the Court notes that its role is not to judge the wisdom of South Carolina's absentee voting law, but rather its constitutionality. For all of the reasons set forth above, the Court finds that Plaintiffs have not met their burden of showing by a preponderance of the evidence that South Carolina's absentee voting law violates the Twenty-Sixth Amendment, the Equal Protection Clause of the Fourteenth Amendment, or the First Amendment, and the Court declines to judicially legislate, as requested by Plaintiffs, where it finds that South Carolina has not infringed on Plaintiffs' constitutional rights.

## **CONCLUSION**

Based on the foregoing, the Court denies Plaintiffs' motion (ECF No. 36) and grants the SEC Defendants' motion for summary judgment (ECF No. 39), thereby concluding this

20

matter.[21]

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 27, 2025
Charleston, South Carolina

---

[21] As mentioned in footnote 3, *supra*, it does not appear that Defendant Charleston County Board of Elections and Voter Registration joined in the SEC Defendants' motion for summary judgment. Nevertheless, because the Court's findings apply equally to this Defendant, this Order effectively resolves the case as to all parties.